ORDERED.

**Dated: March 31, 2021**

*Jerry A. Funk*
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

NATALIE G. CLARKSON,   Case No.: 3:20-bk-01091-JAF
                      Chapter 7

            Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Case is before the Court upon the Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. § 707(b)(2) and for Totality of the Circumstances under 11 U.S.C. § 707(b)(3) (the "Motion") (Doc. 24), filed by the United States Trustee (the "Trustee"). The Court conducted a trial on January 13, 2021. Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On March 26, 2020, the Debtor filed a voluntary Chapter 7 bankruptcy petition. (Doc. 1). The Debtor has been employed for five years by a medical group practice and earns an hourly rate

of $20.50.¹ (Tr. Ex. 14). The Debtor's non-filing spouse, Mr. Owens, is a carpenter employed by a construction company and earns an hourly rate of $20.00. (Tr. Ex. 15).

As of the petition date, the Debtor had approximately $46,751.00 in unsecured debt of which $43,469.00 is from an eviction judgment (the "Judgment") in 2003. The Debtor testified that she only recently learned of the Judgment when she was served a writ of garnishment, and it is what precipitated her decision to file for bankruptcy.²

The Debtor's average gross monthly income as of the filing date of the petition was $3,559.32.³ (Tr. Ex. 14). Mr. Owens' average gross monthly income as of the petition date was $3,218.00. (Tr. Ex. 15). Based on the Debtor's Amended Statement of Current Monthly Income, the Debtor was required to fill out Form 122A-2 (the "Means Test") to determine if the presumption of abuse arises. (Tr. Ex. 7).⁴ The Debtor's Amended Means Test indicates that there is no presumption of abuse, and that the Debtor has *negative* monthly disposable income of $336.00. (Tr. Ex. 8). The Trustee, however, disputes the accuracy of the Debtor's calculations, and asserts that the Debtor has $576.57 in adjusted monthly disposable income.⁵ (Tr. Ex. 11 at 5). Having said that, the Court finds the Debtor's adjusted monthly disposable income is actually $550.69. The Trustee asserts that Debtor incorrectly based the calculations in the Amended Means

---

¹ The Debtor's pay advices show that she earned an hourly rate of $19.50 in 2019 and that her hourly rate increased to $20.50 in 2020.

² The Debtor also testified that although she never resided in the rental residence, she did co-sign the lease for a former boyfriend.

³ The Debtor's pre-petition average gross monthly income is based on her pay advices from the preceding six months of the petition date (the pay advices have a "pay date" ranging from October, 2019 to March, 2020). (Tr. Ex. 14).

⁴ The Debtor's Amended Schedules I & J reflect a monthly net income of $997.00. However, the Trustee's calculations reflect a substantially higher net monthly income of $1,822.74. (Tr. Ex. 25).

⁵ The Trustee's calculations are set forth in a Section 707(b)(2) Comparative Chart. (Tr. Ex. 11). The only modification the Court makes to the chart is that the Debtor's average pre-petition gross monthly wages for the six months preceding the petition date should be $3,559.32, versus the amount of $3,585.20 as listed in the chart. This modification results in a *slightly* lower adjusted monthly disposable income of $550.69.

Test off her post-petition income and expenses. The Trustee, therefore, asserts that the presumption of abuse does arise in the case.

If the presumption of abuse does arise, the Debtor seeks to rebut the presumption by claiming special circumstances. Specifically, the Debtor and Mr. Owens testified that due to the Covid-19 pandemic they have each experienced a reduction in work hours since the filing of the petition, Mr. Owens will be transitioning from a W-2 employee to a 1099 employee, and their living expenses have increased because of an increase in their mortgage and insurance payments. The Debtor also testified that she incurred significant medical expenses in February and March of 2020.[6]

## Conclusions of Law

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). "In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA'), Congress made sweeping changes to the Bankruptcy Code to address perceived abuses of the bankruptcy system and to ensure that debtors with the ability to repay their debts do so." In re Norwood–Hill, 403 B.R. 905, 907-908 (Bankr. M.D. Fla. 2009). "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). However, it is well-established that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. In re Jacob, 447 B.R. 535, 538 (Bankr. N.D. Ohio 2010) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)); see also In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009)

---

[6] Although the Debtor stated health insurance would cover a portion of her medical expenses, she did not specify the amount she is responsible for, nor did she substantiate the medical expenses with documentation.

("There is now no presumption favoring Chapter 7 relief, but an emphasis on repaying creditors as much as possible."). Discharge "is, instead, a legislatively created benefit that Congress may withhold at its discretion." In re Jacob, 447 B.R. at 538. "To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed." Id. When Chapter 7 relief is sought, the conditions mandating dismissal are set forth in § 707 of the Bankruptcy Code. Section 707(b)(1) provides that a court may dismiss a Chapter 7 case filed by an individual whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. In re Sepielli, No. 3:19-2685-JAF, 2020 WL 5407769, at *2 (Bankr. M.D. Fla. Sept. 8, 2020)

Section 707(b)(2)(A)(i) of the Bankruptcy Code requires a court to presume that abuse exists if the debtor's current monthly income, reduced by allowed deductions and multiplied by sixty (60), is greater than or equal to the greater of twenty-five percent (25%) of the debtor's non-priority, unsecured claims or $8,175.00, whichever is greater, or $13,650.00.

"The means test under Section 707(b)(2) is intended to be a snapshot of the Debtor's finances as of the petition date." In re Dowd, 607 B.R. 833, 837 (Bankr. E.D. Va. 2019); see also In re McKay, 557 B.R. 810, 815-16 (Bankr. W.D. Okla. 2016) ("The great weight of authority holds that the means test calculation of § 707(b)(2) is based on a 'snapshot' of a debtor's financial situation *as of the petition date*, without consideration of whether the debtor's expenses may change after that date.") (emphasis in original).[7] Therefore, routine, post-petition changes in a debtor's financial situation cannot be considered for purposes of the means test. Dowd, 607 B.R. at 838.

---

[7] Post-petition changes to a debtor's income and expenses are typically dealt with under § 707(b)(3)'s totality of the circumstances test, rather than the means test under § 707(b)(2).

4

Accordingly, the Trustee is correct in his assertion that the Means Test is to be filled out based upon a snapshot of the Debtor's pre-petition income, and that the Debtor's post-petition income and expenses should not be used in the initial calculation of whether the presumption of abuse arises. As stated above, the evidence shows that based on the Debtor's financial situation as of the petition date, the Debtor has $550.69 in adjusted monthly disposable income. (Tr. Ex. 11). Therefore, the Debtor can pay approximately $33,000.00 over the life of the plan, much more than the threshold of $13,650.00 to fund a sixty (60) month plan. Id. The Trustee has therefore established a presumption of abuse under § 707(b)(2).

The presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or order to active-duty service in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.[8] See 11 U.S.C. § 707(b)(2)(B)(i).

Although the Debtor did not claim any special circumstances on her Amended Means Test, she now requests that the Court consider her and Mr. Owens' alleged post-petition reduction in income and increased living expenses as special circumstances in order to rebut the presumption of abuse. Specifically, the Debtor and Mr. Owens testified that their post-petition work hours have been reduced because of the Covid-19 pandemic, and their living expenses have increased because of medical bills, and an increased mortgage and insurance payment.[9]

The last year has been an unprecedented time due to the global pandemic. The resulting hardship from the pandemic, which includes the closure of businesses and the reduction of work

---

[8] Alternatively, if the presumption of abuse does not arise or the Court finds the debtor has successfully rebutted the presumption of abuse, the United States Trustee may then request dismissal pursuant to § 707(b)(3). Pursuant to § 707(b)(3), the Court shall consider whether the debtor filed the petition in bad faith or whether the totality of the circumstances of the Debtor's financial situation demonstrates abuse.

[9] Mr. Owens also testified that he will be transitioning from being a W-2 employee to a 1099 employee.

hours for employees, is certainly a special circumstance that is out of a debtor's control. However, as the Court will detail below, the record does not support a finding that the Debtor and Mr. Owens experienced a meaningful post-petition reduction of income.

At the hearing, the Debtor testified that her monthly income decreased post-petition, and that the reduction is reflected on her Amended Schedules.[10] Upon review, however, the Court finds that the Debtor's pay advices reflect that the Debtor had a slightly higher average gross monthly income post-petition than in the six months preceding the petition date.[11] (Tr. Ex. 14). Therefore, the evidence before the Court does not reflect a post-petition decrease in the Debtor's income.[12] With respect to Mr. Owens, his post-petition pay advices show only a small decrease of $35.00 in his average gross monthly income as compared to his earnings as of the filing of the petition.[13]

Further, no documentary evidence was submitted to substantiate the Debtor's and Mr. Owens' testimony with respect to medical bills and the increased mortgage and insurance payments.[14] This is notable because for special circumstances to be considered a debtor is required to provide "documentation" for such expenses, along with a "detailed explanation" to justify the need for and reasonableness of the additional expenses. See §707(b)(2)(B)(ii). Finally,

---

[10] The Debtor's Amended Statement of Current Monthly Income lists the Debtor's gross wages as $2,687.00 a month. (Tr. Ex. 7). However, the Debtor's post-petition pay advices dated from May, 2020 to August, 2020, show that the Debtor's average monthly gross wages total approximately $3,618.00. (Tr. Ex. 14). The Debtor did not produce pay advices subsequent to August, 2020.

[11] This increase appears to be attributable to an increase in the Debtor's hourly rate of pay from $19.50 in 2019, to $20.50 in 2020.

[12] The majority of the Debtor's post-petition pay advices show that the Debtor worked eighty (80) hours every two week pay period. There are only two post-petition pay advices that show the Debtor worked fewer hours. Specifically, the pay advices for the pay period beginning April 25, 2020 and ending May 8, 2020 and the pay period beginning July 18, 2020 and ending July 31, 2020 show the Debtor worked 72 hours per pay period. (Tr. Ex. 14).

[13] The Debtor's initial Statement of Current Monthly Income lists Mr. Owens' gross monthly income as $3,218.00. (Tr. Ex. 2). Mr. Owens' post-petition pay advices reflect only a small decrease, with an average gross monthly income of $3,183.09. (Tr. Ex. 15).

[14] The Debtor did not list any medical or dental expenses on her Amended Schedule J. (Tr.'s Ex. 9).

with respect to the Debtor's contribution to her 401K, this Court has previously held that contributing to a 401K is "an entirely voluntary action, the antithesis of an expense for which there is no reasonable alternative." In re Tauter, 402 B.R. 903, 906 (Bankr. M.D. Fla. 2009)

Although the Court is sympathetic to the Debtor's financial situation, the record before the Court does not support a finding that the Debtor has rebutted the presumption of abuse. As the presumption has not been rebutted by "special circumstances" the Court does not reach the "totality of circumstances" test under § 707(b)(3).

## Conclusion

Based on the above, the Court will grant the Motion to Dismiss because the record before the Court supports the Trustee's position that the presumption of abuse has arisen under § 707(b)(2), and the Debtor has failed to rebut the presumption. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Clerk's Office to Serve